UNITED STATES *v*. ALPERS & MOTT (No. 1044).[1]

ANALYSIS WITHOUT SAMPLE OF THE MERCHANDISE.

There was a chemical analysis of the glycerin of the importation. Proof of this was excluded because a sample of the glycerin analyzed was not produced. To make the production of a sample a condition precedent to the admission of proof of the analysis was error. The failure to produce a sample might affect the weight, but not the competency of the evidence offered.

United States Court of Customs Appeals, February 12, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29966 (T. D. 32847).

[Reversed.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The material facts necessary to a decision of this case, appearing of record, are substantially as follows: The entry was made June 1, 1911. It consisted of glycerin contained in ten iron drums, marked "A. M. S.," and was brought to this country from Germany by the S. S. *Volturno*.

The glycerin was described in the invoice as "crude saponification glycerin," and was, under date of August 5, 1911, returned by the appraiser as "refined glycerin according to United States chemist's report," and duty was thereupon assessed at 3 cents per pound under the last clause of paragraph 24 of the tariff act of 1909. It was before the board and is here claimed by the importers to be dutiable under the first clause in the same paragraph as "glycerin, crude, not refined."

The Board of General Appraisers found the merchandise to be as claimed by the importers and sustained their protest, whereupon the Government appealed to this court.

When the case came on for hearing before the board, neither party produced any sample of the importation. The importers, however, produced a sample of glycerin, and their evidence tended to show that it was substantially like the importation and was crude glycerin.

The assignments of error raise several questions, chiefly those relating to the admission or rejection of evidence, but we find it unnecessary to consider any except as hereinafter stated.

A chemical analysis of the glycerin was required by the appraiser in order to determine whether it was crude or refined, and his report that it was refined was based upon what was assumed to be an analysis thereof made by a Government chemist and which showed it was refined.

A sample of the importation was drawn in the usual manner, marked, numbered, and identified as such and left with the proper officer to be forwarded to the Government chemist for analysis. There was no direct evidence that this sample reached him. The

[1] Reported in T. D. 33201 (24 Treas. Dec., 252).

Government offered to show by the chemist, and as to his competency as an analyst there is no question, that shortly after the date when the sample was drawn and marked he analyzed a sample of glycerin which had upon it identifying numbers and marks corresponding to those which had been placed upon the sample of the importation, and also that he subjected it to such tests as enabled him to determine if it had been refined. There was no question that the chemist truly reported to the appraiser as a result of this test that the glycerin was refined or that the assessment of the importation as *refined* glycerin was based upon such report.

Under these circumstances the importers' counsel objected to the offered evidence, not that it did not tend to prove the identity of the sample, but because no portion of the sample examined had been retained and produced at the hearing. The board excluded the evidence upon the theory that it was incumbent upon the Government to first produce a part of the sample which the chemist had analyzed in order that the importers might have an opportunity to test the correctness of his analysis.

The importers' present claim relating to the exclusion of the evidence is best stated in the language of their brief:

If the Government had been allowed full latitude, the best that could have been accomplished by their witnesses upon their own representations would have been to show that Dr. Ozias, the chemist, was competent to determine whether glycerin was crude or refined and that he analyzed a sample of glycerin properly and found that it was refined glycerin and that he reported his conclusion to this effect in Chemist's Report No. 8881.

There is nothing in the record to show that the glycerin so analyzed and reported upon was out of the importation in question. This is a phase of the situation which the Government has entirely overlooked.

But this contention, it is obvious, begs the issue.

If the offered evidence had been received, it would have had a legal tendency to show that the chemist did examine a sample of the importation, and it appearing that his test showed it to be refined glycerin, the evidence excluded, if admitted, would have tended to support the correctness of the collector's classification and assessment. The board then, upon the evidence of both parties, would find whether the chemist in fact analyzed a sample of the importation; and if it found he did, would give such probative effect to his analysis as in its judgment it was entitled to receive.

We think the board erred in its ruling that the Government, as a condition precedent to the admission of the evidence as to the analysis, must produce a sample of the substance analyzed. Such a failure to produce, if it was to be given any effect whatever, and that question was wholly for the board, related not to the competency of the evidence, but to the weight thereof.

The offered evidence referred to was erroneously excluded.

The judgment of the Board of General Appraisers is *reversed* and the cause remanded for a new trial.